[Cite as *Straight v. Straight*, 2020-Ohio-4692.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| BONNIE S. STRAIGHT, | : | **O P I N I O N** |
| Petitioner-Appellee, | : | |
| - vs - | : | **CASE NO. 2020-A-0014** |
| DAVID L. STRAIGHT, SR., | : | |
| Respondent-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2019 DR 00412.

Judgment:  Affirmed in part, reversed in part, and remanded.

*Alexandria M. Ruden, Howard G. Strain,* and *Haley Kyle Martinelli*, Legal Aid Society of Cleveland, 1223 West Sixth Street, Cleveland, Ohio 44113 (For Petitioner-Appellee).

*Michael P. Geary*, 55 North Chestnut Street, Jefferson, Ohio 44047 (For Respondent-Appellant).

THOMAS R. WRIGHT, J.

{¶1}    Appellant, David L. Straight, Sr., appeals a domestic violence civil protection order prohibiting him from having contact with appellee, Bonnie S. Straight.  We affirm in part, reverse in part, and remand.

{¶2}    The parties were married for approximately 40 years.  At the end of the marriage, they owned and lived on two adjacent lots in a campground.  Pursuant to the parties' separation agreement incorporated into the dissolution decree, they agreed to remain co-owners of the two lots.  The agreement further provides that appellee would

reside at 1373 North Open Court, appellant would reside at 1374 North Open Court, and each would be responsible for the obligations associated with their respective lots.

{¶3} During the months following the dissolution, appellee lived on her lot. Appellant, however, lived with Wendy Stahl at her residence in the same campground, but he kept property on his lot. As a result, the parties saw each other on a regular basis and had ongoing disagreements about multiple issues.

{¶4} In September 2019, appellee sought a domestic violence civil protection order against appellant. In the accompanying affidavit, she alleges: (1) in May 2019, appellant threatened to kill her during an argument at her residence; (2) on multiple occasions in August and September 2019, appellant entered her lot or residence without consent; (3) on at least five occasions, he grabbed or touched her breasts without her consent; and (4) on one occasion, appellant entered her home uninvited and propositioned her for sex.

{¶5} On the date of filing, a magistrate issued an ex parte civil protection order ("CPO"), prohibiting appellant from going within 500 feet of appellee. Appellee presented evidence consistent with her affidavit at the evidentiary hearing. Appellee's daughter, Lori Straight, also testified. Appellant denied threatening appellee's life or inappropriately touching her. He also presented evidence that he was elsewhere on the dates the sexual abuse allegedly occurred. Furthermore, Wendy Stahl testified about statements appellee made about her motive for pursuing the CPO.

{¶6} On October 8, 2019, the magistrate granted the civil protection order, and the trial court adopted the decision that same day. The magistrate found that appellee was either in danger of, or had been the victim of, sexually oriented offenses, and the magistrate relied in part on Lori's testimony that she saw appellant lean into appellee's

2

vehicle and grab her breasts.

{¶7} Appellant was ordered not to go within 500 feet of appellee; not to encourage any other person to perform an act he was not permitted to do; and not to take or dispose of any personal property in appellee's possession.

{¶8} Appellant objected to the finding that he committed a sexually oriented offense, arguing in part that the magistrate should not have relied on Lori's testimony. He also challenged two additional evidentiary rulings the magistrate made during the hearing.

{¶9} Before the trial court addressed the objections, the magistrate granted appellant's motion to retrieve his property, giving him two days within a one-week period. But because of a delay in the service of the order, appellant was unable to remove his property within that time frame. As a result, he moved for additional time. The magistrate gave two days to remove his property within a two-week period. This time appellant accessed the property and removed some, but not all, of his property. Consequently, he moved for additional time, arguing that two days was insufficient. The trial court overruled the motion.

{¶10} After a separate hearing in January 2020, the trial court overruled appellant's objections to the magistrate's decision and upheld its prior adoption of the CPO. Regarding appellant's assertion that the 500-foot provision improperly denies him access to personal property, the court held that this objection was moot because the CPO was modified to allow him to retrieve his property. The court also found that even though the magistrate referred to one incident of sexual abuse testified to by Lori, appellee testified to at least five separate instances during which appellant grabbed or touched her breasts.

{¶11} Appellant appeals the CPO and the denial of his second motion for

3

additional time to retrieve his property and assigns the following as error:

{¶12} "[1.] The trial court erred, and abused its discretion, to the prejudice of the Respondent-Appellant, in approving the provision to the Petitioner-Appellee of a domestic violence civil protection order against the Respondent-Appellant.

{¶13} "[2.] The trial court erred, and abused its discretion, to the prejudice of the Respondent-Appellant, in approving the provision to the Petitioner-Appellee of a domestic violence civil protection against the Respondent-Appellant that contains terms which effectively deprive the Respondent-Appellant from having access to, and the use of, his personal property, and the real estate, at 1374 North Open Court.

{¶14} "[3.] The trial court erred, and abused its discretion, to the prejudice of the Respondent-Appellant, in denying the second motion of the Respondent-Appellant for extension of time to allow the Respondent-Appellant to retrieve his personal property, thereby effectively depriving the Respondent-Appellant from having access to, and the use of, his personal property.

{¶15} "[4.] The trial court erred, and abused its discretion, to the prejudice of the Respondent-Appellant, in denying, at the full hearing on the issuance of the domestic violence civil protection order, the admission into evidence of the playing of the audio recording of the Petitioner-Appellee's statement as to why she filed the petition for protective order that was recorded on the smartphone of witness, Wendy Stahl.

{¶16} "[5.] "The trial court erred, and abused its discretion, to the prejudice of the Respondent-Appellant, in allowing, at the full hearing on the issuance of the domestic violence civil protection order, the admission into evidence of the depictions of a breast of Petitioner-Appellee in a solely digital, electronic format, which could not be seen by those in the courtroom at the time of the hearing other than from the hand-held video

4

device of the attorney for Petitioner-Appellee."

{¶17} Under his first assignment, appellant contends the court erred in finding domestic violence solely on Lori's testimony, arguing that her testimony should have been rejected because: (1) she did not see appellant touch or grab appellee's breasts; and (2) appellee's testimony was inconsistent with Lori's since appellee did not testify that appellant touched her breasts while she was in a vehicle. Appellant challenges the domestic violence finding as against the manifest weight of the evidence.

{¶18} "To grant a DVCPO, 'the trial court must find that the petitioner has shown by a preponderance of the evidence that the petitioner or petitioner's family or household members are in danger of domestic violence.' *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus * * *." *Sanchez v. Sanchez*, 1st Dist. Hamilton No. C-150441, 2016-Ohio-4933, ¶ 16.

{¶19} The term domestic violence is statutorily defined and includes the following:

{¶20} "(a) The occurrence of one or more of the following acts against a family or household member:

{¶21} "* * *

{¶22} "(iv) Committing a sexually oriented offense."

{¶23} R.C. 3113.31(A)(1)(a)(iv).

{¶24} A challenge to the manifest weight of the evidence requires an appellate court to review the evidence presented "including the reasonable inferences and the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed." *Chandler v. Chandler*, 11th Dist. Trumbull No. 2016-T-0046, 2017-Ohio-710, ¶ 13, citing, inter alia, *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶

5

20.  In weighing the evidence, we are always mindful of the presumption in favor of the finder of fact.  *Eastley*, at ¶ 21.

{¶25}  The weight to be given evidence and witness credibility are primarily for the trier of fact.  *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28.  The trier of fact is free to believe all, part, or none of a witness's testimony.  *Id.*

{¶26}  As noted, appellant's primary argument is that the magistrate predicated his finding of domestic violence solely on Lori's testimony about an incident occurring in a vehicle.  This assertion is incorrect.  Although Lori's testimony was referenced, the decision also states: "This court further finds by a preponderance of the evidence: * * * that the Petitioner * * * [has] been a victim of domestic violence or sexually oriented offenses as defined in R.C. 3113.31(A) committed by Respondent * * *."  Furthermore, in overruling appellant's objections, the trial court notes that appellee "testified that David sexually assaulted her numerous times by grabbing her breasts."

{¶27}  She referred to at least five different instances when appellant touched her breasts without consent.  In addition, she cited another incident in which appellant entered her residence uninvited and propositioned her for sex.  Although appellee seemed uncertain about when specific events occurred, she testified that she forgot her notes about the incidents.

{¶28}  Appellant correctly notes that appellee did not testify that he grabbed her breasts while she was sitting in her car as Lori did.  Moreover, although Lori conceded on cross-examination that due to her distance from appellee's vehicle, she did not actually see appellant touch appellee when he stuck his hand inside the car, Lori maintained that she heard appellee yell at appellant as he was removing his hand.  From this, she inferred the touching.

6

{¶29} Thus, there was testimony from appellee, if believed, coupled with reasonable inferences, that appellant repeatedly committed sexually oriented offenses. *See* R.C. 2907.06(A)(1) (Sexual imposition is committed when the offender has sexual contact with another, not his spouse, and the offender knows the contact is offensive.); R.C. 2950.01(A)(1) (A violation of R.C. 2907.06 is a "sexually oriented offense" for purposes of R.C. Chapter 2950.); R.C. 3113.31(A)(6) (If a crime is a sexually oriented offense under R.C. Chapter 2950, it is also a sexually oriented offense for purposes of R.C. 3113.31(A)(1)(a)(iv).). We do not find the court lost its way. Appellant's first assignment lacks merit.

{¶30} Under his second assignment, appellant challenges the enforceability of the 500-foot requirement. He maintains that the requirement must be vacated because it is not necessary to protect appellee and it results in an unconstitutional taking of his real estate and personal property. In objecting to the magistrate's decision, however, appellant did not raise these arguments.

{¶31} His sole objection was that the 500-foot requirement, along with two other provisions, had the effect of denying him access to his lot to remove his personal property. In overruling the objections, the trial court correctly found appellant's objection moot because he was given time to remove his property.

{¶32} Failure to assert an objection to a magistrate's decision waives the issue on appeal. *In re Marriage of Beynenson*, 11th Dist. Geauga No. 2012-G-3066, 2013-Ohio-341, ¶ 39, citing Civ.R. 53(D)(3)(b)(iv). This is consistent with the principle that an appellate court will not consider any alleged error not brought to the trial court's attention. *Id.* Furthermore, plain error analysis is not permissible in an appeal from a civil protection order. *J.S. v. D.E.*, 7th Dist. Mahoning No. 17 MA 0032, 2017-Ohio-7507, ¶ 21, citing

7

Civ.R. 65.1.

{¶33} Thus, his second assignment lacks merit.

{¶34} Under his third assignment, appellant challenges the trial court's denial of his motion for additional time to remove his property as an abuse of discretion.

{¶35} Despite appellee's argument, we have jurisdiction to address this issue. Appellant appealed the initial CPO, the nunc pro tunc CPO, and the February 10, 2020 judgment overruling his objections within 30 days of the latter. Because he filed timely objections, the time to appeal the COP orders was stayed until the objections were overruled. Civ.R. 65.1 (G).

{¶36} Appellant initially testified that he could remove his property in two days, and he was given that much time to do so. In moving for additional time, appellant conceded that he underestimated the amount of time needed. In support of his request for additional time, he attached the affidavit of a deputy sheriff who stated that he observed the condition of the property and thought that four additional days were necessary. Appellant also attached photographs showing the remaining property to be removed.

{¶37} In the absence of conflicting evidence, the trial court erred in not giving appellant an additional four days conditioned upon law enforcement presence. His third assignment has merit.

{¶38} Under his next assignment, appellant challenges the magistrate's refusal to allow him to play an audio recording saved on Stahl's smartphone at the hearing. Stahl testified that three days before the hearing, she recorded appellee telling her that appellee was seeking the CPO to gain control over appellant's lot and personal property.

{¶39} Stahl also testified the recording was saved on her smartphone, but she did

8

not want her phone admitted into evidence. Appellant's counsel learned about the recording on the day of hearing and therefore did not have a copy to introduce into evidence. Counsel sought to play the recording into evidence so it would be recorded on the court's audio system. The magistrate denied the request but allowed Stahl to testify about appellee's statements.

{¶40} In asserting the court erred in not allowing the recording to be played in the absence of an exhibit, appellant cites no authority in support as required. *Village of S. Russell v. Upchurch*, 11th Dist. Geauga No. 2001-G-2395, 2003-Ohio-2099, ¶ 11, citing App.R. 16(A)(7) and App.R. 12(A)(2); *State v. Perry*, 11th Dist. Lake No. 2014-L-043, 2014-Ohio-5616, ¶ 18. The assignment is therefore overruled.

{¶41} Appellant's fourth assignment is without merit.

{¶42} Under his final assignment, appellant argues he was denied a fair trial when the magistrate permitted appellee to introduce two photographs she took on her cell phone. As part of her initial conversation with her counsel prior to bringing this action, appellee told counsel that appellant bruised one of her breasts during one of the incidents. She took two photographs of the bruises and emailed them to counsel.

{¶43} During appellee's testimony, her attorney showed the photographs appellee sent him on his iPad. Prior to questioning appellee about the photographs, counsel showed the photos to the magistrate and opposing counsel on the iPad. Appellee's counsel also submitted a duplicate of the photograph file on a jump drive. Appellant objected to the use of the iPad and jump drive as the means of submitting the photographs into evidence. The magistrate overruled the objection and accepted the jump drive into evidence.

{¶44} Appellant argues that the use of iPad and jump drive should not have been

9

permitted because only appellee and her counsel could see the photographs during her direct examination. He further asserts that since his counsel did not bring a computer to the hearing, he had no means to cross-examine appellee on the photographs. Appellee argues that the jump drive is admissible under the best evidence rule because it contains a duplicate of the photograph file.

{¶45} For purposes of the best evidence rule, "photographs" include "still photographs, X-ray films, video tapes, and motion pictures." Evid.R. 1001(2). The term "duplicate" is defined as "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduce the original." Evid.R. 1001(4).

{¶46} As noted, Evid.R. 1003 states that a duplicate is admissible to the same extent as an original "unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The Staff Notes to Evid.R. 1003 indicate that a duplicate is admissible as a copy of the original when the duplicate "reproduces" the original "by some accurate means * * *."

{¶47} In contesting the admission of the photographs, appellant does not dispute that the images accurately reproduce the original photographs. Moreover, he does not dispute the authenticity of the originals. Therefore, the jump drive is admissible under the best evidence rule because it sets forth duplicates of the original photographs.

{¶48} As to the use of the iPad and the lack of hard copies of the photographs, there is nothing indicating that appellant's counsel asked for access to the iPad to examine appellee. Accordingly, the proceeding did not deprive appellant of a fair trial.

10

His fifth assignment is not well taken.

{¶49} The judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with our disposition of the third assignment.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.

11